**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1246

AMGUARD INSURANCE COMPANY,

        Plaintiff - Appellant,

    v.

SG PATEL AND SONS II LLC; STEVEN RENEW, individually as parent of Matthew Renew and as personal representative of the Estate of Matthew Renew; STEPHANIE RENEW, individually and as parent of Matthew Renew and as personal representative of the Estate of Matthew Renew; LUKE PICKERING; BRITTIN RAY; MICHAEL A. EDWARDS; BRIAN GIBSON; JOHN DOES 1-50; JOHN DOES INC 1 - 50; JOHN DOES LLC 1-50,

        Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Orangeburg. J. Michelle Childs, District Judge. (5:19-cv-00635-JMC)

Argued: May 6, 2021                                                            Decided: June 7, 2021

Before NIEMEYER, FLOYD, and RUSHING, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Floyd and Judge Rushing joined.

**ARGUED:** Crystal L. Maluchnik, JANIK L.L.P., Hilton Head Island, South Carolina, for Appellant. Justin Tyler Bamberg, BAMBERG LEGAL, Bamberg, South Carolina, for Appellees. **ON BRIEF:** Steven G. Janik, JANIK L.L.P., Hilton Head Island, South Carolina, for Appellant. J. Martin Harvey, Barnwell, South Carolina, for Appellees.

NIEMEYER, Circuit Judge:

This appeal presents the question of whether the district court had subject matter jurisdiction over an interpleader action commenced by a liability insurance company, whose policy was exposed to conflicting and excess claims.

Facing numerous claims made against its insured — a convenience store — that exceeded the policy limits, AmGuard Insurance Company, a Pennsylvania corporation with its principal place of business in Pennsylvania, commenced this action in the nature of an interpleader and for a declaratory judgment against its insured and the claimants to the proceeds of its policy, all of whom were South Carolina citizens. For the interpleader claim, AmGuard relied on 28 U.S.C. § 1335 (statutory interpleader), and for its declaratory judgment claim, it relied on 28 U.S.C. § 2201 (creating the declaratory judgment remedy) and 28 U.S.C. § 1332 (establishing diversity jurisdiction). Sua sponte, the district court dismissed the action for lack of subject matter jurisdiction on the ground that no diversity of citizenship existed among the claimants to the AmGuard policy, as required by § 1335(a) (providing jurisdiction in interpleader actions when "[t]wo or more adverse claimants, of diverse citizenship[,] . . . may claim to be entitled to [a policy's proceeds]"). The court did not address AmGuard's request for a declaratory judgment and dismissed the action in its entirety.

Because AmGuard disputed the amount that the claimants maintained was available under AmGuard's policy, having acknowledged coverage for only a lesser amount, we conclude that it was a "claimant" adverse to the other claimants to the proceeds of the policy, and accordingly, the diverse citizenship between AmGuard and the South Carolina

2

claimants provided the district court with the minimal diversity needed for jurisdiction under § 1335. We therefore reverse and remand for further proceedings.

I

On Friday evening, July 13, 2018, one of a group of five underage teenagers purchased beer at the "Quick & Easy" convenience store in Barnwell County, South Carolina, which was owned by SG Patel and Sons II LLC, and the five began drinking the beer on the premises. Later that evening — in the early morning hours of July 14 — the five were in a car that was being driven by one of them who was under 18, "severely intoxicated," and driving too fast. Unable to negotiate a bend in the road, the driver crashed into a concrete loading dock, killing one passenger and severely injuring the other four occupants. The five occupants (the deceased through his estate) made claims against the convenience store and AmGuard, its insurer, asserting that the convenience store was liable for their injuries in selling beer to an underaged person. They claimed that their damages far exceeded the policy limits of the AmGuard liability insurance policy issued to the convenience store.

By a letter to AmGuard dated February 14, 2019, the five claimants sought to lay the foundation for a bad-faith claim against the insurance company, as recognized in *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.E. 346, 348 (S.C. 1933) (recognizing a bad-faith claim against an insurance company for damages in excess of policy limits). The letter demanded that AmGuard settle with the five claimants for $3 million — the amount they claimed was payable under AmGuard's policy — and stated that the offer would be

"immediately and irrevocably withdrawn" after five days. The letter also warned that after the offer was withdrawn, the claimants would file suit seeking damages against the convenience store "in excess of the available policy limits." The letter noted that in a neighboring county, a jury had recently returned a verdict of over $25 million against a convenience store that had sold beer to minors, resulting in an accident.

The policy that AmGuard issued to Patel had liability limits of $1 million for each occurrence and $2 million in the general aggregate for all occurrences, and liquor liability limits of $500,000 for each common cause and $1 million in the aggregate. The policy provided that the $500,000 figure was "the most [AmGuard] [would] pay for all 'bodily injury' and 'property damage' sustained by one or more persons or organizations as the result of the selling, serving or furnishing of alcoholic beverages to any one person."

Following receipt of the claimants' letter, AmGuard took the position that the $500,000 liquor liability limit applied and was the maximum for which it could be liable under the policy. Accordingly, it commenced this action against Patel and the five claimants for a declaratory judgment to resolve the dispute over policy limits, for interpleader to have the court distribute the policy limits among the five claimants, and for an injunction protecting it from further claims with respect to the occurrence. In particular, the complaint sought a declaratory judgment under 28 U.S.C. § 2201, requesting the court to "declare the rights and legal relations of the Parties to . . . these proceedings" and asserting that AmGuard provided coverage of only $500,000 under the liquor liability limit. It also sought interpleader under 28 U.S.C. § 1335, requesting an order authorizing AmGuard to deposit $500,000 into the registry of the court and post a bond for the

additional $2.5 million in dispute, bringing the total to $3 million, "which is the maximum sum sought by Defendants in connection with the Accident." Finally, the complaint sought court orders requiring the defendants to interplead with respect to the deposited sum and, pursuant to 28 U.S.C. § 2361, restraining the defendants from instituting or prosecuting any other proceeding against AmGuard "in any State or United States court affecting the Policy's proceeds, obligations and/or issues involved in this interpleader action."

In alleging jurisdiction, the complaint asserted that AmGuard was a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania; that Patel was a limited liability company organized under the laws of South Carolina with its principal place of business in South Carolina; that the five claimants were citizens and residents of South Carolina; and that the amount in controversy exceeded $75,000. On those allegations, it alleged that the court had subject matter jurisdiction to grant a declaratory judgment pursuant to the complete diversity of citizenship required under § 1332 and that the court had jurisdiction to order the interpleader pursuant to § 1335, which requires only minimal diversity of citizenship among at least two "adverse claimants."

The defendants filed answers to the complaint and, at the same time, motions to dismiss pursuant to Rules 12(b)(1) and 12(h). In their motions, they contended that because the claimants withdrew their "time-sensitive *Tyger River* settlement demand," the action was "either moot or not currently ripe for adjudication." They argued that "[b]ecause the settlement demand about which AmGuard brings this action is no longer active, and the question of coverage in the policy is entirely dependent on the factual averments in the now

non-existent demand — and in turn a non-existent Complaint for the underlying accident — there is no longer a justiciable case or controversy before the Court and it should dismiss AmGuard's action." The defendants did not otherwise dispute the allegations of subject matter jurisdiction contained in AmGuard's complaint.

AmGuard opposed the defendants' motion to dismiss and filed its own motion for summary judgment for a declaratory judgment and interpleader.

The district court conducted a hearing on the pending motions, during which the defendants reiterated that "the matter is moot." They maintained that "[w]ithout there being an offer on the table, there's no basis for [AmGuard's] [declaratory judgment] and interpleader at this point in time, . . . [which] divests this Court of jurisdiction over this matter." AmGuard argued, however, that the continuing dispute over the policy's limits presented an actual case or controversy and therefore that the case was not moot. As it explained to the court, "[t]hey think it's 3 million [dollars]. We think it's a half million. But we're here to pay the limits as the Court orders from that standpoint." AmGuard also argued that the interpleader statute established jurisdiction, authorizing an action against claimants that "*may claim* to be entitled to such money" from an insurance policy. 28 U.S.C. § 1335(a)(1) (emphasis added). During the dialogue with the court about the depositing of money, AmGuard stated that the action was "not a Rule 22 interpleader, . . . because the filing of the original complaint was under 28 U.S.C. § 1335," which requires a deposit of money or a bond. And with respect to § 1335, it asserted that there was "minimal diversity" as required by that section.

6

The district court thereafter issued an opinion and order dismissing the case for lack of subject matter jurisdiction. In doing so, it relied on grounds not previously raised by any party. It stated that § 1335 jurisdiction requires "[t]wo or more adverse claimants, of diverse citizenship," which was not satisfied in this case because all the defendants with claims to the proceeds of the insurance policy were citizens of South Carolina. While the court did acknowledge that the citizenship of AmGuard as "stakeholder" could create minimal diversity, that was so only when a stakeholder "is an *interested* stakeholder," (emphasis added). The court concluded that AmGuard had not asserted the necessary interest. It acknowledged that because there was complete diversity between AmGuard and the defendants, it would have jurisdiction under 28 U.S.C. § 1332 to consider AmGuard's request for relief under Rule 22 interpleader but that AmGuard had "expressly declined application of Rule 22 interpleader." The court never addressed AmGuard's separate request for a declaratory judgment based on diversity jurisdiction under § 1332.

From the district court's final judgment dated February 28, 2020, dismissing the action, AmGuard filed this appeal.

II

For its main argument, AmGuard contends that the district court erred in dismissing its action for lack of subject matter jurisdiction under 28 U.S.C. § 1335. It argues that because it was an "interested stakeholder" in the interpleader action — disputing $2.5 million of the $3 million coverage sought by the claimants — its own citizenship should

7

have been "considered for purposes of establishing minimal diversity for statutory interpleader."

Resolving this issue calls for an involved analysis, but the discussion will be facilitated by first addressing the interpleader procedure at a more general level.

Interpleader has, in one form or another, been in existence for over 600 years. 7 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1701 (4th ed. 2019) [hereinafter Wright & Miller]. The classic circumstance that interpleader has addressed is where one party, a "stakeholder," has money or other property that is claimed, or may be claimed, by two or more other parties, the "claimants," creating a risk of inconsistent claims to the property or judgments against the stakeholder that exceed the value of the property. *See Texas v. Florida*, 306 U.S. 398, 405–06 (1939). The interpleader procedure permits the stakeholder to join all claimants and efficiently resolve their claims to a corpus in "a single forum and proceeding." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 (1967); *see also* Wright & Miller, *supra*, § 1702. In its strict (or "pure" or "true") form, therefore, the stakeholder has no interest in the money or property at issue but simply deposits the money or property with the court for distribution to the claimants. Stated otherwise, the stakeholder makes no claim to a part of the money or property for itself and is "indifferent" as to which claimant should receive the money or property. *Killian v. Ebbinghaus*, 110 U.S. 568, 571 (1884); *see also Atkinson v. Manks & Holroyd*, 1 Cow. 691, 703 (N.Y. 1823) (noting that in a strict interpleader action, "the complainant has no beneficial interest in the thing claimed"). Once the property is deposited in the court, the court directs the claimants to interplead among

8

themselves for their portion, and the stakeholder is discharged. *See* 4 James Wm. Moore et al., *Moore's Federal Practice* § 22.02[2] (3d ed. 2020) [hereinafter Moore's].

By contrast, in an action *in the nature* of interpleader, the plaintiff is not merely a stakeholder but also has an interest in the money or property, and it may initially deny whether some or all of the property is owed to any or all claimants. *See Texas*, 306 U.S. at 406–07; *Killian*, 110 U.S. at 572. If the court determines that at least some of the plaintiff's money or property is owed to the claimants, the claimants are then directed to interplead among themselves for the appropriate allocation of the money or property. *See Lummis v. White*, 629 F.2d 397, 400 (5th Cir. 1980), *rev'd on other grounds sub nom. Cory v. White*, 457 U.S. 85 (1982).

Today, the interpleader procedure can be pursued in federal court under two different provisions, which differ somewhat in practice and benefit. Federal Rule of Civil Procedure 22 ("rule interpleader") functions much like joinder rules and can be invoked only when federal jurisdiction is otherwise established. *See Leimbach v. Allen*, 976 F.2d 912, 916 (4th Cir. 1992). Typically, plaintiffs invoke rule interpleader under a court's diversity jurisdiction, which requires complete diversity of citizenship between all plaintiffs and defendants and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332; *see* Moore's, *supra*, § 22.04[2][a] ("The vast majority of rule interpleader cases invoke diversity of citizenship jurisdiction"). Alternatively, an interpleader action can be filed under 28 U.S.C. § 1335 ("statutory interpleader"). Such an action requires (1) *minimal* diversity between "[t]wo or more adverse claimants," (2) a value of $500 or more in controversy, and (3) a deposit in court by the plaintiff of the amount in dispute or

9

a bond. 28 U.S.C. § 1335(a). "Minimal" diversity means that at least two claimants are not co-citizens, even if others are. *See Tashire*, 386 U.S. at 530 (assessing diversity of citizenship "without regard to the circumstance that other rival claimants may be co-citizens").

Both rule interpleader and statutory interpleader share features that are relevant to this appeal. First, either method may be invoked not only when claimants have already made a claim to the stakeholder's property but also when the claimants *may make* such a claim in the future. *See* 28 U.S.C. § 1335(a)(1) (authorizing interpleader when "adverse claimants . . . are claiming *or may claim* to be entitled to such money or property" (emphasis added)); Fed. R. Civ. P. 22(a)(1) ("Persons with claims that *may expose* a plaintiff to double or multiple liability may be joined as defendants and required to interplead" (emphasis added)); Wright & Miller, *supra*, § 1707 (noting that Rule 22 "[s]imilarly . . . embraces prospective claims"). Second, both rule interpleader and statutory interpleader recognize and incorporate the history of equitable interpleader described above, including the fundamental distinction between strict interpleader actions and actions in the nature of interpleader. *See* 28 U.S.C. § 1335 ("The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed . . ."); Fed. R. Civ. P. 22(a)(1)(B) (clarifying that "interpleader is proper even though . . . the plaintiff denies liability in whole or in part to any or all of the claimants"); *see also Lummis*, 629 F.2d at 400 ("Both remedies, strict bills of interpleader and bills in the nature of interpleader, were embodied in the Federal Interpleader Act of 1936 . . . and in the form of interpleader provided in 1938 by Rule 22" (citation omitted)).

But there are also important differences. Rule interpleader functions much like a joinder rule and provides no additional attributes of the kind available under statutory interpleader. Section 1335 contains a jurisdictional provision that relaxes the traditional diversity requirements of § 1332, and it authorizes the court to receive a deposit of the subject property or a bond. Also, 28 U.S.C. § 1397 provides liberalized venue for § 1335 actions, and 28 U.S.C. § 2361 provides nationwide service of process. Section 2361 also explicitly authorizes the district court to discharge an interpleader plaintiff "from further liability" and to enforce its interpleader judgment with permanent injunctions and other orders.

With this background in hand, we turn to the question presented here — whether statutory interpleader's requirement of minimal diversity among adverse claimants can be satisfied when the defendants named in the interpleader are citizens of the same State but the plaintiff that commenced the action is a citizen of a different State and alleges an interest in the property. Some courts have answered in the affirmative. *See, e.g.*, *Lummis*, 629 F.2d at 403; *Mt. Hawley Ins. Co. v. Fed. Sav. & Loan Ins. Corp.*, 695 F. Supp. 469, 473 (C.D. Cal. 1987). And others have answered in the negative. *See, e.g.*, *Am. Fam. Mut. Ins. Co. v. Roche*, 830 F. Supp. 1241, 1246–49 (E.D. Wis. 1993); *Travelers Ins. Co. v. Harville*, 622 F. Supp. 68, 69 (S.D. Ala. 1985). We conclude that the better reasoned position is that an interpleader plaintiff's citizenship may be considered to satisfy § 1335's minimal diversity requirement when the action is in *the nature of* interpleader.

First, in invoking diversity of citizenship to justify jurisdiction, § 1335 refers to § 1332, where diverse citizenship is defined. *See* 28 U.S.C. § 1335(a)(1) (employing

11

"diverse citizenship as defined in subsection (a) or (d) of section 1332"). And diversity jurisdiction under § 1332 implements the policy underlying Article III of the Constitution, which extends federal judicial power to "Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2, cl. 1. That constitutional provision in turn "entertains" the "apprehensions" or "fears" of prejudice in state courts against citizens of other States. *Bank of the U.S. v. Deveaux*, 9 U.S. (5 Cranch) 61, 87 (1809) (Marshall, C.J.). This policy that underlies diversity of citizenship in judicial actions should thus underlie our analysis, recognizing that controversies involving citizens of different states may be litigated in federal courts to ensure the impartial administration of justice. And this policy thus informs our understanding of § 1335, which requires "two adverse parties [who] are not co-citizens." *Tashire*, 386 U.S. at 531; *see also Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 71 (1939) (noting that statutory interpleader "is based upon the clause of Section Two, Article III, of the Constitution, U.S.C.A., which extends judicial power of the United States to controversies 'between citizens of different States'").

Second, § 1335 addresses both strict interpleader actions, in which the "plaintiff" is neutral and therefore a stakeholder with no interest in the corpus at issue, and actions in the nature of interpleader, in which the "plaintiff" claims an interest in all or part of the corpus. The statute never uses the word "stakeholder." Rather, it uses the term "plaintiff," which anticipates the distinct roles that a plaintiff may assume. Thus, when an interpleader plaintiff claims no interest in the corpus, it functions in the traditional role of stakeholder, much like "a person entrusted with the stakes of bettors." *Merriam-Webster's Collegiate Dictionary* 1214 (11th ed. 2020) (defining "stakeholder"). But when the plaintiff claims

an interest in all or part of the corpus — as is the case in an action in the nature of interpleader — it stands in conflict or "controversy" with the other claimants to the corpus such that the plaintiff and the defendant-claimants are adverse. In this role, the plaintiff stands as a claimant vis-à-vis the corpus just as does every other claimant.

Finally, when the plaintiff in the role of claimant has a citizenship different from another *adverse* claimant, that diversity justifies federal jurisdiction. In that circumstance, the "apprehension" or "fear" of an out-of-state citizen that may be attendant to state court proceedings is implicated, as the diversity-of-citizenship policy embodies. Thus, when § 1335 confers jurisdiction on federal courts for controversies among "adverse claimants, of diverse citizenship," the term "adverse claimants" includes a plaintiff who has an interest in the corpus, making its interest adverse to the other claimants.

Our interpretation of § 1335 comports with the Supreme Court's description. The Court has explained that an interpleader plaintiff's citizenship does *not* matter when it is a *disinterested* stakeholder. *See Treinies*, 308 U.S. at 72 (emphasizing that in a strict interpleader action, the plaintiff's citizenship is irrelevant because its "deposit and discharge effectually demonstrates [its] disinterestedness as between the claimants and as to the property in dispute"). But this conclusion also suggests its corollary — that an *interested* plaintiff's citizenship is relevant, as the plaintiff is not disinterested in the money or property deposited with the court.

Moreover, the Supreme Court has emphasized that interpleader is "remedial and to be liberally construed," *Tashire*, 386 U.S. at 533, to "remedy the problems posed by multiple claimants to a single fund," *id*. at 530; *see also Texas*, 306 U.S. at 405–07

13

(defining interpleader's purpose over centuries as "avoidance of the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty"). That purpose is certainly furthered by considering an interpleader plaintiff's citizenship in an action in the nature of interpleader where the plaintiff would face rivalrous claims to the property and those claims would have "interstate aspects," i.e., diversity of citizenship, suited to federal court. 13F Wright & Miller, *supra*, § 3636 (3d ed. 2009).

Those courts that have reached the opposite conclusion have done so primarily based on the assumed textual distinction in § 1335 between *claimants* and *stakeholders*. *See Roche*, 830 F. Supp. at 1248. This reading, however, ignores the long-held distinction between strict interpleader actions and actions in the nature of interpleader, which § 1335 explicitly recognizes. And more particularly, it fails to recognize that in an action in the nature of interpleader, the plaintiff *is* a claimant in the action and its position is adverse to at least one other claimant. *See* Moore's, *supra*, § 22.04[2][b] ("[I]n essence, the stakeholder is in fact a claimant"). Importantly, these cases overlook that the interpleader statute never uses the term "stakeholder" and does not otherwise exclude the possibility that the plaintiff that filed the interpleader action may simultaneously claim an interest in the property. But even if a court labels the plaintiff, regardless of its role, as a stakeholder, it must recognize that while some stakeholders are disinterested in the corpus, others do have an interest and thus are also claimants.

In this case, AmGuard did not simply seek, as a disinterested party, to distribute to claimants the proceeds of its insurance policy. Rather, it sought to deny its liability for paying the majority of the funds claimed by the defendants. *Cf.* Robert E. Keeton,

14

*Preferential Settlement of Liability-Insurance Claims*, 70 Harv. L. Rev. 27, 40 (1956) (noting that "since the [insurance] company is usually contesting the liability of the insured to the claimants, it is not a disinterested stakeholder"). Accordingly, AmGuard is a claimant, and its diverse citizenship from other claimants gave the district court jurisdiction under § 1335.

We therefore reverse the judgment of the district court rejecting the minimal diversity jurisdiction of § 1335 in the circumstances of this case and remand for further proceedings.

III

In its complaint, AmGuard also invoked 28 U.S.C. § 1332 (diversity jurisdiction) to justify the district court's jurisdiction over the case. As AmGuard alleged, it was a citizen of Pennsylvania, the defendants were citizens of South Carolina, and the amount in controversy exceeded $75,000. The district court, however, never addressed this basis for jurisdiction and therefore erred.

To be sure, AmGuard invoked jurisdiction under both § 1332 and § 1335, relying on § 1332 to justify its declaratory judgment claim and § 1335 for its interpleader claim. But even after rejecting AmGuard's § 1335 invocation of jurisdiction, the district court could have relied on jurisdiction under § 1332 and applied Rule 22 to address AmGuard's interpleader request. A district court may consider a request for interpleader under *either* method of interpleader — Rule 22 or § 1335 — "even if the complaint asserts the wrong one, so long as the complaint can be construed to confer jurisdiction under one or the

other." Moore's, *supra*, § 22.04[1]. But the district court here refused to do so because it understood AmGuard as having "expressly declined application of Rule 22 interpleader" during the course of the motions hearing.

At the hearing, AmGuard stated that "[i]t's not a Rule 22 interpleader" but instead that the action had been filed under the interpleader statute. That statement, however, was made in the context of AmGuard explaining why it sought to deposit funds with the court, which was required for statutory interpleader but not for rule interpleader. *See* 28 U.S.C. § 1335(a)(2). Thus, when read in context, AmGuard's statement should not have been taken to foreclose any reliance on Rule 22 if the court were to determine that statutory interpleader was unavailable. After all, the district court provided no notice to AmGuard that it was concerned about statutory interpleader's diversity requirement at the time of the hearing. But even if that subject had been discussed at the hearing, the court would still have had discretion to consider Rule 22 interpleader. *See Truck-A-Tune, Inc. v. Ré*, 23 F.3d 60, 62 (2d Cir. 1994). In these circumstances, we conclude that the district court abused its discretion in failing to consider application of Rule 22 after it dismissed the statutory interpleader claim without notice to the parties. *See Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001) (observing that "*sua sponte* dismissals without prior notice or opportunity to be heard are hazardous" (cleaned up)).

In this same vein, § 1332 also provided the district court with jurisdiction to resolve AmGuard's declaratory judgment claim, yet the court dismissed the entire action without addressing why it did not have jurisdiction under § 1332. This error too requires reversal.

16

IV

The defendants neither defend nor dispute the grounds for dismissal relied on by the district court. Rather, in a two-and-one-half-page appellate brief, they argue simply that because they withdrew their *Tyger River* letter and had not filed any other lawsuits based on Patel's sale of beer to the underaged defendants, this action is moot, and therefore this court lacks jurisdiction to decide the case under Article III, citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976). At oral argument, however, the defendants declined to foreswear any future action for damages against Patel and AmGuard.

AmGuard contends in response that there still is a justiciable controversy between the parties to determine the extent of its liability to the defendants. We agree.

To begin, the interpleader statute confers jurisdiction on a district court so long as the claimants "*may claim* to be entitled to such money or property . . . arising by virtue of any . . . policy." 28 U.S.C. § 1335(a)(1) (emphasis added). Based on this language, the Supreme Court has consistently held that "to bring an interpleader suit, 'a plaintiff *need not await actual institution of independent suits*,'" as the defendants now insist. *California v. Texas*, 457 U.S. 164, 166 n.1 (1982) (per curiam) (emphasis added) (cleaned up) (quoting *Texas*, 306 U.S. at 406). Rather, to satisfy the requirement of a justiciable case, "it is enough if [the plaintiff] shows that conflicting claims are asserted and that the consequent risk of loss is substantial." *Id.* (quoting *Texas*, 306 U.S. at 406). In other words, an interpleader plaintiff need only "possess[] a bona fide fear of adverse claims" to the property to file an interpleader action. *Lexington Ins. Co. v. Jacobs Indus. Maint. Co.*, 435 F. App'x 144, 147–48 (3d Cir. 2011) (emphasizing that "a formal claim against the policy

17

or suit by [a claimant] was not required"); *see also CNA Ins. Co. v. Waters*, 926 F.2d 247, 251 (3d Cir. 1991).

This is the uniform approach taken in authoritative treatises and by all other courts of appeals. *See* 7 Wright & Miller, *supra*, § 1707; Moore's, *supra*, § 22.03[1][e] ("The stakeholder has a right to bring an interpleader case even if some or all of the claims against the stake are prospective"); *see also, e.g.*, *N.Y. Life Ins. Co. v. Sahani*, 730 F. App'x 45, 50 (2d Cir. 2018); *Auto Parts Mfg. Miss., Inc. v. King Constr. of Hous., LLC*, 782 F.3d 186, 194 (5th Cir. 2015) ("Even the mere threat of multiple vexation by future litigation provides sufficient basis for interpleader. Statutory interpleader under § 1335 is especially liberal, permitting a valid interpleader action if two claimants *may* claim to be entitled to the interpleader funds, even if there is not yet a claim" (cleaned up)); *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 895 (9th Cir. 2012) ("[I]nterpleader extends to potential, as well as actual, claims" (cleaned up)); *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 642 (6th Cir. 2007) ("The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder . . . is whether the stakeholder legitimately fears multiple vexation directed against a single fund or property" (cleaned up)); *Dakota Livestock Co. v. Keim*, 522 F.2d 1302, 1308 (8th Cir. 1977) ("Although [the claimant] has not as yet asserted any liability on the part of [the plaintiff], he has not admitted that no such liability exists").

Here, AmGuard's complaint adequately alleged a bona fide fear of adverse claims in describing its policy insuring Patel, in recognizing that Patel sold beer to an underaged person leading to a fatal automobile accident, and in noting the claimants' *Tyger River*

18

letter threatening claims in excess of policy limits. As is well settled, AmGuard "need not await actual institution of independent suits" against it or its insured before it may request a court to determine its liability. *Texas*, 306 U.S. at 406. It had a bona fide fear of adverse claims.

The district court was therefore not deprived of jurisdiction upon the defendants' withdrawal of their time-sensitive demand letter.

V

For the reasons given, we reverse the district court's judgment and remand for further proceedings. And in conducting those proceedings, the court may conclude that major issues no longer need to be resolved, as the defendants in their appellate brief, which was signed by all defendants, expressly assured us that they "*do not contest* AmGuard's assertion that its liability limits on its policy issued to Patel are $500,000." (Emphasis added). Of course, resolution of this issue does not affect the district court's jurisdiction, which is, in these circumstances, determined as of the time the complaint was filed. Nor does it foreclose resolution of the remaining issues and the need to follow procedures as specified under § 2201 and § 1335.

REVERSED AND REMANDED<br>FOR FURTHER PROCEEDINGS